UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY HOUSE and JENNIFER HOUSE,<br><br>         Plaintiffs<br><br>     v.<br><br>PAUL SANDNER MOLLER and ROSA MARIA MOLLER; and DOES 1-25 inclusive,<br><br>         Defendants.<br>_____<br>and Consolidated Actions.<br>_____ | No. 2:09-cv-02796-MCE-DAD<br><br><br><br>**MEMORANDUM AND ORDER** |

----oo0oo----

Through the present action, Plaintiffs Gregory House and Jennifer House ("the Houses") seek specific performance against Defendants Paul Sandner Moller and Rosa Maria Moller ("the Mollers") pursuant to a right of first refusal contained within an agricultural lease entered into by the Houses with Paul Moller on February 25, 2002.

///

1

That lease contained a so-called "right of first refusal" which gave the Houses the option of purchasing the leased property, located in Dixon, California, at the same terms as any otherwise submitted offer during the pendency of their lease.  The Houses allege that the Mollers in fact agreed to sell the property in April of 2007, prior to the time their lease expired on December 31, 2007, to Dana and Edward Foss ("the Fosses") without affording them the requisite right of first refusal.

Presently before the Court is the Houses' Motion for Preliminary Injunction, filed on October 30, 2011.  Shortly after that Motion was filed, on November 2, 2011, the Houses filed a Motion for Temporary Restraining Order to block a Trustee's Sale concerning the property, scheduled at the behest of the Fosses and set to occur on November 15, 2011.  In order to preserve their right to specific performance as to the property, the Houses moved to prevent any foreclosure sale from occurring until after the instant Motion for Preliminary Injunction has been adjudicated.  The Houses' request for a temporary restraining order on those terms was not opposed and was granted by the Court on November 9, 2011.  The Fosses, who filed their own lawsuit against the Mollers and the Houses concerning the property (as consolidated herein) have opposed the Houses' Motion for Preliminary Injunction.  As set forth below, that Motion will be granted.

///
///
///
///

2

**BACKGROUND**

The Houses own and operate an organic farm on property adjacent to a parcel of agricultural land, owned by the Mollers, that is the subject of this lawsuit. On February 25, 2002, as indicated above, the Houses entered into an agricultural lease with Paul Moller in order to cultivate Moller's 35 acre adjacent parcel together with their own property. That lease expired by its terms on December 31, 2007, but contained a right to extend the lease for an additional six years, as well as a provision that should Moller decide to sell the parcel, the Houses would be "granted the right of first refusal" in purchasing the property. Agricultural Lease, Exh. 1 to the Decl. of Greg House, ¶ 24.

In early 2007, during the pendency of his lease with the Houses, Paul Moller decided to sell the property, apparently prompted by the need to raise cash to satisfy a stipulated judgment against him. He contacted the Fosses, both of whom are real estate agents, and listed the parcel with Ms. Foss. After an initial offer on the property brokered by Ms. Foss fell through, the Fosses submitted their own offer to purchase the parcel on or about April 9, 2007, for the sum of $1,250,000.00 Pursuant to that offer, the Fosses tendered a down payment in the amount of $225,000.00. That sum was sufficient to satisfy the aforementioned stipulated judgment, an immediate short-term capital need recognized by the Fosses as a result of Ms. Foss' own agency relationship with Paul Moller. The Fosses' offer was accepted by Paul Moller and Rosa Maria Moller a week later, on or about April 16, 2007.

1  As security for the $225,000.00 deposit, the Mollers executed a
2  third deed of trust on the property, in favor of the Fosses, that
3  was recorded on or about May 9, 2007.

4     All of this occurred without any knowledge on the part of
5  the Houses.  It was not until several weeks later, on or about
6  May 21, 2007, that Paul Moller telephoned Greg House and left a
7  message informing him of his intent to sell the property for
8  financial reasons, as well as the fact that he intended to leave
9  the country that day for a period of three weeks.  Greg House
10 called back and reminded Moller of the right of first refusal
11 contained within the agricultural lease.  Moller candidly admits
12 that he had altogether forgotten about that provision.  See Dep.
13 of Paul Moller, Vol. 1, 62:2-10; 65:11-66:1.

14    The Mollers never provided the Houses with a copy of the
15 Purchase Agreement entered into with the Fosses, but on May 21,
16 2007, Dana Foss faxed a copy of that Agreement to Greg House.
17 Four days later, on May 25, 2007, the Houses sent Paul Moller a
18 letter memorializing their intent to exercise the right of first
19 refusal on the parcel in accordance with their agricultural
20 lease.  The Houses stated they would be "put[ting] together a
21 package equivalent to the Foss's offer" and would meet with the
22 Mollers when they returned from abroad.  May 25, 2007 letter,
23 Exh. 3 to the Decl. of Greg House.

24    On or about June 9, 2007, at a point in time apparently
25 before the Mollers' return, the Fosses began moving into a rental
26 house on the subject property.  On June 13, 2007, Jennifer House
27 went to the Mollers' residence and found Ms. Moller at home.
28 ///

4

Ms. House ultimately did speak to Paul Moller, who again acknowledged that he had forgotten about the right of first refusal. At no point during this conversation did Moller discuss the terms of his Purchase Agreement with the Fosses.

On June 18, 2007, having heard nothing further from the Mollers, Jennifer House returned to the Moller residence and delivered to Ms. Moller a letter signifying the Houses' intent to purchase the subject property "on the same material terms set forth in the Standard Residential Purchase Agreement entered into by you and the Fosses in April 2007." A deposit in the amount of $1,000.00 was also tendered at that time.

On June 19, 2007, Paul Moller wrote to the Houses and informed them that he required the sum of $225,000.00 in accordance with his agreement with the Fosses and that, accordingly, the Houses' deposit was rejected. The Houses claim that this was the first they knew that and additional $224,000.00 had to be paid as an initial deposit rather than as part of the purchase price at close of escrow.[1]  See Motion, 9:9:-18.

///
///

---

[1] While Paul Moller claims he sent a letter on June 15, 2007, acknowledging the Houses' intent to exercise their option, and setting forth his requirement that a $225,000.00 deposit be made, the Houses deny ever receiving that letter and state that they never saw it until after this litigation was commenced. Examination of the letter, in fact, shows that it was addressed not to the address provided on the lease, but rather to a rarely used post office box. Moreover, according to Greg House, the letter was not in the post office box when he had checked its contents on June 25, 2007, but did appear shortly after July 4, 2007. See Second Decl. Of Greg House, ¶ 3. Either way, it appears the letter did not surface until well after the Houses filed the instant lawsuit.

5

1  According to the Houses, at no time did Moller ever acknowledge
2  the fact that the Houses had exercised their right of first
3  refusal or provide any guidance as to his expectations with
4  respect to any forthcoming offer.  Those failures, and the
5  Houses' desire to protect their interest in the property,
6  prompted them to file the present lawsuit the same day that
7  Moller rejected their right of first refusal offer.  The Houses
8  thereafter filed a lis pendens on the property for purposes of
9  safeguarding their rights.
10      The Fosses' purchase of the property has not been completed,
11 both because of the pending lis pendens and potentially also
12 because the Fosses' representation that their prior residence was
13 in escrow (a contingency for the sale) was apparently incorrect
14 and the Fosses otherwise lacked the funds to consummate the
15 transaction.  Approximately a week after the Houses filed suit,
16 the Fosses filed their own suit against the Mollers and the
17 Houses.  The two lawsuits were consolidated while both matters
18 were still pending in state court.
19      The two lawsuits were stayed by the Mollers' May 2009
20 federal bankruptcy filing.  In July of 2009, the Houses moved to
21 remove the case to bankruptcy court in view of the Mollers'
22 bankruptcy filing.  Thereafter, on January 5, 2010, upon a motion
23 to withdraw reference filed by the Fosses, the consolidated
24 actions came here for adjudication.  The bankruptcy trustee
25 subsequently filed a Motion for Abandonment in April of 2011 on
26 grounds that the property was of inconsequential value to the
27 bankruptcy estate.
28 ///

6

It should also be noted that on October 9, 2007, some three months after Houses' lawsuit was initially filed, the Fosses, through their company, Capital Region Equities, LLC, bought the second deed of trust on the property (in the amount of $350,000.00) in order to shore up their equity position. That left the Fosses with both the second and third deeds of trust on the property, with only the holder of the first mortgage, Citibank/Chase, having a superior lien interest. The Mollers' alleged default on those two notes[2] prompted the Fosses, in April of 2011, after the bankruptcy stay had been lifted, to commence foreclosure proceedings against both the second and third notes. Those foreclosure proceedings, in turn, prompted the Houses to seek preliminary injunctive relief in order to preserve the status quo pending the outcome of this litigation as to the Houses' claim for specific performance.

## **STANDARD**

The issuance of a preliminary injunctive relief is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such a remedy by clear and convincing evidence.
///

---

[2] Whether the Mollers are in default on both notes is in question given the fact that the Fosses are residing in a house located on the parcel (not part of the agricultural lease with the Houses), the $2,200.00 monthly rent on which is to be applied to the third deed of trust pursuant to a July 2007 residential lease. Additionally, it appears that the Fosses also acquired a leasehold interest on the agricultural portion of the property (that formerly had been held by the Houses) on or about March 1, 2008, and continuing to the present. There is no evidence that the Fosses are paying for that agricultural lease, either.

7

See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 442 (1974).  Following the Supreme Court's decision in Winter v. Natural Resources Defense Council, 129 S. Ct. 365 (2008), the party requesting such relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter, 129 S. Ct. at 374.  Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiffs' favor.  Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1052-53 (9th Cir. 2010) (finding that sliding scale test for issuance of preliminary injunctive relief remains viable after Winter).

**ANALYSIS**

**A.   Likelihood of Success on the Merits**

The thrust of the Houses' lawsuit is their claim for specific performance as to the right of first refusal granted under the terms of the February 2002 agricultural lease.
///
///

8

1  In seeking preliminary injunctive relief, the Houses request that
2  the status quo be preserved pending this Court's adjudication as
3  to that controversy.
4      As enumerated above, Paul Moller concedes that he forgot
5  about the right of first refusal accorded to the Houses and
6  entered into a Purchase Agreement for the property with the
7  Fosses on or about April 16, 2007.  It was not until nearly a
8  month later, on May 21, 2007, that the Houses received any notice
9  that a sale of the parcel to the Fosses was in fact pending.
10 Consequently, it appears virtually undisputed that the Houses did
11 not receive the right of first refusal to which they were
12 entitled before the sales agreement with the Fosses was signed.
13     Nor is Paul Moller's conduct after disclosing the pending
14 sale to the Houses any more persuasive in arguing that a
15 meaningful right of first refusal was extended to the Houses.
16 Moller himself never even provided a copy of the sales agreement
17 to the Houses.  Aside from the questionable June 15, 2007, letter
18 that appears to have not been received until well after this
19 lawsuit was filed (see fn. 1, supra), Paul Moller never offered
20 the property for sale to the Houses either orally or in writing,
21 acknowledged the Houses' right of first refusal, or informed the
22 Houses of just what terms he required as a prerequisite for
23 exercise of that right.  Instead, Moller summarily denied the
24 Houses' offer to purchase the property "on the same material
25 terms" as those set forth in the Foss Purchase Agreement,
26 including a stated willingness and ability on the part of the
27 Houses to close escrow in 120 days.
28 ///

9

Under these circumstances, the Court believes that the Houses have adequately demonstrated that they were not afforded an adequate opportunity to exercise their right of first refusal. Consequently, they have established a likelihood of success on the merits as to their claims for specific performance as to their right of first refusal, as well as with respect to their alternative claim for breach of contract.

The Court is unpersuaded by the Fosses' argument that the Houses attempt, in essence, to jump in favor of more senior lienholders in this matter, including the Fosses' purchase of the 2006 second deed of trust, as well as the Fosses' third deed of trust dating from May of 2007.  The Fosses argue that because the Houses' lis pendens was not filed until June of 2007, that lis pendens cannot take priority over the prior liens on the property.  The Fosses ignore the fact, however, that the Houses' right of first refusal goes back to a contract with Paul Moller dating back to February of 2002.  The Houses had an executory agreement at that time, even though it obviously could not be exercised until such point of time when an offer to purchase the property was made.

**B.   Irreparable Injury**

Proceeding with foreclosure against the second and third deeds of trust, as advocated by the Fosses, would likely result in a transfer of title to the property from the Mollers.
///
///

10

1  A change of title in this regard would obviously impede the
2  Court's ability to order specific performance as to the Houses'
3  right of first refusal.  See, e.g., Moeller v. Lien, 25 Cal. App.
4  4th 822, 831 (Cal. App. 1994) ( "As a general rule, the purchaser
5  at a nonjudicial foreclosure sale receives title under a
6  trustee's deed free and clear of any right title, or interest of
7  the trustor.")  Maintaining the status quo, on the other hand, as
8  the Houses point out, would prevent the Fosses from proceeding
9  with foreclosure until a final judgment is issued in the present
10 case. It follows that prohibiting foreclosure proceedings from
11 moving forward preserves the Houses' potential claim against the
12 property in question by way of specific performance.
13      For purposes of preliminary injunctive relief, real property
14 is considered unique, and controversies regarding title may
15 constitute irreparable harm sufficient to warrant issuance of an
16 injunction.  See Sundance Land Corp. v. Community First Federal
17 Sav. And Loan Ass'n, 840 F.2d 653, 661-62 (9th Cir. 1998).  Money
18 damages may accordingly be inadequate.  This is particularly true
19 given the specialized nature of the Houses' organic farming
20 operation, the fact that the parcel at issue was immediately
21 adjacent to the Houses' own property, and the fact that the
22 Houses had already developed and farmed the property for some
23 five years as an integral part of their agricultural enterprise.
24 ///
25 ///
26 ///
27 ///
28 ///

11

The Court rejects the Fosses' argument that no irreparable harm is indicated because the Houses can always buy the property at the trustee's sale engendered by foreclosure proceeding. As the Houses point out, however, nothing would prevent either the Fosses or anyone else from outbidding the Houses for the property, and in an auction setting there is, virtually by definition, no assurance that the Houses would be the successful purchasers. Unlike a public auction, a right of first refusal grants a preference to the holder of the right over other prospective purchasers. Miller & Starr, <u>California Real Estate</u> (3rd Ed. 2001), 19:136.

### C.  **Balance of Equities**

According to the Houses, the balance of equities tip sharply in their favor because, as already indicated above, foreclosure will end this Court's ability to award specific performance, and thus cause irreparable injury to the Houses. The Fosses, on the other hand, continue to live on a house on the property rent-free, and will likely do so for the duration of this dispute. In accordance with the Fosses' lease with the Mollers, the agreed upon rent of the house is $2,200.00 monthly. Even after offsetting the Mollers' debt obligations on the third deed of trust at $1,312.50 per month, the Fosses are continuing to receive what amounts to positive cash flow from the Mollers that can in effect go towards the Moller's debt as to the second deed of trust.
///

12

1  In addition, the Fosses currently have the use of the parcel's
2  agricultural acreage and are subleasing the property for tomato
3  farming.  Greg House estimates that the Fosses have received some
4  $30,000.00 to date from the farming leasehold (see Second House
5  Decl., ¶ 4), and those revenues will also continue pending final
6  adjudication of this matter.  Although any estimation in this
7  regard by House may well be speculative, the fact remains that,
8  even in the absence of foreclosure, the Fosses continue to reap
9  financial benefit from their ongoing possession of both the
10 agricultural acreage and the residence.  Those benefits have
11 continued to accrue during the five-year period since the Fosses
12 agreed to purchase the parcel, and certainly mitigate against any
13 prejudice claimed by the Fosses in allowing the present matter to
14 proceed to adjudication, as opposed to immediate foreclosure.
15      Also unpersuasive in terms of establishing prejudice on the
16 part of the Fosses is their claim that the property has allegedly
17 declined in value of the $1,250,000.00 agreed-upon purchase price
18 to an estimated $875,000.00.  According to the Fosses, the fact
19 that the three deeds of trust in themselves total more than
20 $1,000,000 means that additional delay could further impede their
21 ability to recover their investment, particularly given
22 Citibank/Chase's superior first deed of trust, which the Fosses
23 argue could leave them "as a sold-out junior."  Opp., 10:18-20.
24 Permitting the Fosses to foreclose, whether sooner or later,
25 however, will not change that priority.  The first deed of trust
26 will have to be paid off in any event.
27 ///
28 ///

13

Moreover, to the extent that the property has declined in value, foreclosure would do nothing other than to realize that loss on the Fosses' part since, as the holder of the junior lien, any diminishment in value would, by definition, first wipe out the Fosses' third deed of trust.

In assessing the balance of equities in this matter, the overall conduct of the Fosses in this matter also should be considered. The Fosses' relationship with the parcel began because of Dana Foss' agency relationship with the Mollers in listing the property. As an apparent result of that agency status, she knew about Paul Moller's acute need for immediate cash and arguably took advantage of that knowledge in making an offer that provided the needed funds. Additionally, as the Houses' agent, Dana Foss also was charged with knowledge of a significant contractual right like first refusal, which is information that Moller clearly should have imparted to her as his agent. See 3 Witkin, Summary of California Law, Agency, § 150 at 195 (10th ed. 2005) ("As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence communicate to the other"). This makes it questionable whether the Fosses can be deemed to have made a good faith purchase offer, since Dana Foss was charged with notice of an ignored right of first refusal.

Other aspects of the Foss offer give the Court further pause with respect to whether a good faith offer was made. The Fosses' offer on the property was contingent on the sale of another parcel owned by the Fosses.

14

Dana Foss testified that a representation in the offer describing that property as being in escrow was, in fact, incorrect. Dana Foss Dep., Vol I, 141:13-142:18. She also conceded that absent such a sale, the funds needed to close escrow on the property were lacking. Id. at 73:25-74:3. The ability to close escrow was clearly significant, since Paul Moller testified that he would not have accepted the offer had he known that the Fosses' representations were false. Paul Moller Dep. Vol. 1 at 17:15-20. Dana Foss' misstatements in this regard are significant because, given her status as the Moller's agent in addition to being a prospective purchase, a fiduciary obligation was created which required the "duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision." Alhino v. Starr, 112 Cal. App. 3d 158, 169 (1980). Dana Foss' misrepresentation would appear to be a breach of that duty, particularly given the fact that her conduct in crafting an offer that capitalized on her knowledge of the Mollers' dire financial needs would appear to have been problematic in the first place.

   The Fosses' own apparently unclean hands, then, also weigh against resolving the equities of whether a preliminary injunction should be issued in their favor. The Houses, for their part, have what appears to be a meritorious claim for specific performance as to the right of first refusal. They have also made a showing of irreparable harm and further represent that they have been forced to expend some $385,000.00 in attorney's fees to protect their interest.
///

15

Under the circumstances, the balance of equities here weighs squarely in their favor.

**D. Public Interest**

Since this is a private dispute, the public interest would not appear to be implicated by this lawsuit.

**CONCLUSION**

Having determined that the Houses have a likelihood of success on the merits of their claims which will be compromised by allowing foreclosure proceedings instigated by Defendants Edward and Dana Foss to occur during the pendency of this lawsuit, having determined that the Houses have demonstrated irreparable harm should such proceedings be allowed to take place, and finding that the balance of equities weighs in favor of the Houses, the Houses' Motion for Preliminary Injunction (ECF No. 27) is hereby GRANTED.[3] Defendants Edward and Dana Foss, either in their individual capacity or in their capacity or capacities as trustees on their notes of deed of trust, shall not proceed with any steps to foreclose on those interests during the pendency of this lawsuit, or until further order from the Court.
///
///

---

[3] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local Rule 230(g).

16

Although the Court notes the Fosses have requested that a bond be imposed in the event that the instant preliminary injunction is granted, it has determined that no bond should be required.

IT IS SO ORDERED.

Dated: April 15, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE