BLACK & RICE LLP
Robert N. Black, SBN 70178
*rblack@attyblack.com*
Martha D. Rice, SBN 262100
*mrice@attyblack.com*
Autumn E. Luna, SBN 288506
*aluna@attyblack.com*
The McNulty House
710 H Street
Crescent City, CA 95531
Tel:   707-464-7637
Fax:   707-464-7647

*Attorneys for Plaintiffs Gregory and Jennifer House*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY HOUSE, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>PAUL SANDNER MOLLER, et. al.,<br><br>  Defendants | Case No.: 2:09-cv-02796 TLN-DAD<br><br>**PLAINTIFFS' SEPARATE PRETRIAL STATEMENT**<br><br>Date: April 10, 2014<br>Time: 2:00 p.m.<br>Place: Courtroom No. 2 |

Pursuant to this Court's Order of May 12, 2010 entered in the above-entitled adversary proceeding, as modified by its Minute Order of October 3, 2013, the Houses submit this Separate Pretrial Statement.

This case is a property dispute based on an Agricultural Lease, executed between Plaintiffs Jennifer and Gregory House ("Houses") and Defendants Paul and Rosa Marie Moller ("Mollers") in 2002. The Lease contained a "right of first refusal" clause that, in 2007, Houses contend Mollers breached when they agreed to sell the Property to third party Dana and Edward Foss ("Fosses"). The Houses now seek specific performance pursuant to the right of first refusal and damages for breach of contract, interference with contract, trespass, negligence, conversion, and intentional interference with prospective economic advantage.

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a) & (b), 28 U.S.C. §157(d), and 11 U.S.C. § 523(a). Venue in this district is proper pursuant to 11 U.S.C. § 1409(a), the reference to Debtor Moller's Chapter 11 case was withdrawn from the Bankruptcy Court of this district (Order filed January 5, 2010 (Dock. 2)), all parties reside in this district, the property in dispute is located in this district, and all the acts out of which the various claims arose took place in this district.

## II. JURY/NON JURY

The Fosses requested a jury trial pursuant to California Code of Civil Procedure §§631-636.

## III. UNDISPUTED FACTS

1. Paul and Rosa Moller are the owners of the 47-acre real property located in Solano County, California, commonly known as 9341 Currey Road, Dixon, CA 95620 (the "Property").
2. Greg and Jennifer House are farmers who own and farm the parcel adjoining the Property.
3. Dana Foss is a licensed California real estate broker and her husband Edward R. Foss was a licensed California real estate agent.
4. On February 25, 2002 Paul Moller executed a written Agricultural Lease with Greg and Jennifer House for the farmable portions of the Property, described and identified in the lease as "consisting of approximately 35 acres, including animal corrals on the east side of the parcel, but excluding the buildings also on the east side of the parcel." The lease disallowed the planting of trees, but contemplated other crops as well as livestock, and stated that the Houses would convert the leasehold to certified organic status, a process that takes a minimum of three years.
5. The initial lease term extended to December 31, 2007, and the lease provided to the Houses a right to extend the term for an additional six years, which included a right of first refusal to lease the Property. The lease also provided the Houses a right of first refusal of any offer to sell the Property.

6. In March of 2007, the Mollers took steps to sell the Property with the assistance of Dana Foss. This resulted in a Residential Purchase Agreement to sell the Property for $1,250,000 to the Fosses themselves, signed by Paul Moller on April 16, 2007.

7. On May 21, 2007, Paul Moller left a voice-mail message for Greg House stating that he had sold the Property to Dana Foss, and that he would be in his office until five and then out of the country for three weeks. That same day Greg House telephoned Paul Moller and reminded him of the Houses' right of first refusal on the Property contained in the Agricultural Lease. Moller stated that he had forgotten about the right of first refusal, but acknowledged that it existed.

8. Later on May 21, 2007, Greg House called Dana Foss, who, by that time, had been informed by Paul Moller of the Houses' right of first refusal in the Agricultural Lease. In response to Greg House's direct question, Dana Foss said that she was not Moller's agent in this matter. That same day, Dana Foss sent via fax a copy of a Residential Purchase Agreement signed by the Mollers and the Fosses along with a fax cover letter; Greg House received these documents the following business day.

9. On May 25, 2007, the Houses sent a letter to Paul Moller at his Currey Road residence address listed on the Agricultural Lease as his contact address, which states, "In accordance with our agricultural lease dated February 25, 2002, we intend to exercise our right of first refusal to purchase the property at 9341 Currey Road... When you return from overseas we can meet with you to proceed." The Houses provided a copy of this letter to the Fosses.

10. On May 28, 2007 Greg House met Edward Foss on the Property. On June 6, 2007, Jennifer House met Dana Foss at the Houses' business office in Davis.

11. No later than June 6, 2007, Dana Foss received a copy of the Agricultural Lease from Jennifer Moller, Paul Moller's daughter and office manager of his business.

12. The Fosses moved onto the Property and into the rental house on the Property on the weekend of June 9, 2007, while Paul and Rosa Moller were still overseas.

13. On June 9, 2007, Greg House left voice messages both at Paul Moller's residence and his business office asking to meet to discuss the situation.

14. In spite of Greg House's voice messages, the Houses had not heard from the Mollers since their return from overseas, so on June 13, 2007, Jennifer House went to the Mollers' residence. Jennifer House met first with Rosa Moller and then with Paul Moller; no resolution was reached.

15. On June 18, 2007, Jennifer House hand-delivered a letter to Rosa Moller at the Moller residence. Enclosed was a check for $1,000.00, by which the Houses attempted to initiate the exercise of their right of first refusal to purchase the Property.

16. In a letter dated June 19, 2007, and addressed to the contact address listed in the Agricultural Lease, Paul Moller rejected as insufficient the Houses' attempt to exercise their right of first refusal.

17. On June 19, 2007, the Houses filed an action against the Mollers for breach of the terms of the Agricultural Lease and seeking specific performance of their right of first refusal.

18. In a letter dated June 15, 2007, Paul Moller specified the down payment he expected to receive by June 24, 2007. The letter was addressed to a disused post office box of the Houses, rather than to the contact address listed on the Agricultural Lease. The Houses did not receive this letter until after the 2007 Fourth of July holiday.

19. On June 26, 2007, the Fosses filed an action against the Mollers and the Houses; against the Mollers for breach of contract and negligent misrepresentation and seeking specific performance on the Residential Purchase Agreement; against the Houses for quiet title to the Property.

20. Jennifer House and Paul Moller scheduled a meeting for July 12, 2007, at the conference room of Moller's business office in Davis, California; Moller later canceled the meeting on the advice of his attorney.

21. The Fosses began altering the Property in June of 2007, by cutting down trees, modifying the animal corrals for their own use, constructing additional animal fencing in the farmable area north of the buildings, applying herbicides in the animal corrals and the

vicinity of the house, stocking the corrals and newly fenced area with their own animals, and otherwise occupying the farmable portion of the Property. The Fosses occupation and use of these areas continues to the present.

22. In March of 2008, the Fosses hired a farm equipment operator to disk the large agricultural field on the Property, completely destroying the Houses' growing crops and effectively taking possession of that field.

23. In 2009 the Fosses seeded rye in the large field, and in subsequent years continuing through to the present day the Fosses sublet the large field to a local farmer who grows non-organic crops there.

24. The Houses' established Organic Systems Plan for the Property, under the United States Department of Agriculture's National Organic Program, was disrupted by the Fosses' alteration of the Property, and the Houses' established USDA organic certification for the Property was consequently destroyed.

25. The Mollers continue to hold title to the Property.

## DISPUTED FACTUAL ISSUES

26. What damages have the Houses sustained as a result of delays in their ownership of the Property?

27. What damages have the Houses sustained as a result of the refusal of the Mollers to extend the Agricultural Lease beyond December 31, 2007?

28. What attorney's fees have the Houses incurred as a result of any breach of contract for which there is a fee-shifting provision?

<u>Houses' Claim Against the Mollers for Breach of Contract:</u>

29. What did the Houses and Mollers intend the right of first refusal of any offer to sell clause of the Agricultural Lease to provide?

30. Did the Mollers breach the right of first refusal clause of the Agricultural Lease by failing to offer the Property to the Houses?

31. What did the Houses and the Mollers intend the lease extension clause of the Agricultural Lease to provide?

32. Did the Mollers breach the lease extension clause by failing to make a good faith offer to extend the lease to the Houses for another six-year term?

Houses' Claim Against the Fosses for Interference with Contract:

33. Did the Fosses intentionally induce the Mollers to breach the right of first refusal of any offer to sell clause of the Agricultural Lease?

34. Did the Fosses intentionally induce the Mollers to breach the lease extension clause of the Agricultural Lease?

35. What damages did the Houses suffer as a result of the Fosses' interference?

36. Are punitive damages appropriate?

Houses' Claim Against the Fosses for Interference with Prospective Economic Advantage:

37. Did the Fosses engage in wrongful conduct that was intended to disrupt the economic relationship between the Houses and the Mollers?

38. What damages did the Houses suffer as a result of the Fosses' interference?

39. Are punitive damages appropriate?

Houses' Claim Against the Fosses for Trespass:

40. Did the Fosses, beginning in June 2007 and continuing to the present day, enter, alter, use, or otherwise occupy, or cause others to enter, alter, use, or otherwise occupy, without the Houses' consent, the areas of the Property leased by the Houses?

41. What damages did the Houses suffer as a result of the Fosses' conduct?

42. Are punitive damages appropriate?

Houses' Claim Against the Fosses for Conversion:

43. Did the Fosses, beginning in June 2007 and continuing to the present day, enter, alter, use, or otherwise occupy, or cause others to enter, alter, use, or otherwise occupy, without the Houses consent, the areas of the Property leased by the Houses?

44. What damages did the Houses suffer as a result of the Fosses' conduct?

45. Are punitive damages appropriate?

Houses' Claim Against the Fosses for Negligence:

46. Did the Fosses fail to use reasonable care to prevent harm to the Houses beginning in June 2007 and continuing to the present day, by entering, altering, using, or otherwise occupying, or causing others to enter, alter, use, or otherwise occupy, without the Houses consent, the areas of the Property leased by the Houses?

47. What damages did the Houses suffer as a result of the Fosses' conduct?

Fosses' Claim Against the Houses for Quiet Title:

48. Does the Houses' right of first refusal of any offer to sell in the Agricultural Lease preempt the Fosses' offer to purchase?

49. Is the Fosses Residential Purchase Agreement, upon which their claim against the Houses is based, a good faith contract?

## V. DISPUTED EVIDENTIARY ISSUES

As part of the discovery process in the Solano County Superior Court the Houses requested production of communications between the Fosses' counsel and the Mollers' counsel relating to this case. In total, there were 77 undisclosed communications that were identified and requested by the Solano Superior Court. Prior counsel for the Fosses produced 74 of the 77 requested documents, describing the remaining three documents as lost. Judge Paul L. Beeman reviewed these documents *in camera* on November 18, 2008, and ultimately placed them under seal in his Court. The Houses contend that it was Judge Beeman's intent that the documents be available to the trial court in the event that any evidence contained therein became relevant at trial. To that end, it is necessary for those documents to be transferred from Judge Beeman's chambers to this Court. The Houses will file a motion requesting transfer of these documents from the Solano County Superior Court to the United States District Court for the Eastern District of California.

## VI. SPECIAL FACTUAL INFORMATION IN CERTAIN ACTIONS

This action involves two different contracts: The Agricultural Lease and the Residential Purchase Agreement.

THE AGRICULTURAL LEASE (BETWEEN HOUSES AND MOLLERS)

1. Terms of the Contract

The Agricultural Lease was in writing and will be in evidence. The Houses contend that the right of first refusal of any offer to sell contemplated by the parties meant that, in the event Moller decided to sell the property, he was obliged to offer the Property to the Houses at fair market value. Additionally, absent the sale of the Property to the Houses, and in the event the Houses were inclined to extend the lease beyond December 31, 2007, Moller (or his successor) was required to do so at fair market rent.

 2. <u>Nature of Contract</u>

The Agricultural Lease between the Mollers and the Houses, executed on February 25, 2002, was in writing and will be in evidence. The parties do not contend that it was modified by any subsequent agreement, either written or oral.

 3. <u>Matters Affecting Validity</u>

The parties agree that the Agricultural Lease was valid.

 4. <u>Breach of Contract</u>

The Mollers breached the right of first refusal by failing to offer the Property to the Houses, either when Moller made the decision to sell the Property or, subsequently, when the Houses reminded him of it. Additionally, Moller breached his agreement to extend the lease term by refusing to lease the Property to the Houses after the lease was up for renewal on December 31, 2007, agreeing instead to allow the Fosses to occupy the land.

 5. <u>Waiver or Estoppel</u>

There is no claim of waiver or estoppel.

 6. <u>Relief Sought from Mollers</u>

  a. Breach of Right of First Refusal

   i. Specific performance;

   ii. Damages from delay in ownership of the Property;

   iii. Damages from loss of possession of the Property;

   iv. Damages from alteration to the Property; and

   v. Attorney fees and costs.

  b. Breach of Agreement to Extend Lease

   i. Damages from loss of possession of the Property;

   ii. Damages from alteration to the Property; and

   iii. Attorney fees and costs.

 c. Interference with Contract and Interference with Prospective Economic Advantage:

   i. Damages from delay in ownership of the Property;

   ii. Damages from loss of possession of the Property;

   iii. Damages from alteration to the Property;

   iv. Attorney fees and costs; and

   v. Punitive damages.

 d. Trespass, Conversion, and Negligence

   i. Damages from loss of possession of the Property;

   ii. Damages from alteration to the Property;

   iii. Attorney fees and costs; and

   iv. Punitive damages.

7. <u>Measure of Damages</u>

 a. Expectation damages for breach of right of first refusal and breach of agreement to extend lease.

 b. Compensatory damages for intentional interference with contract, intentional interference with prospective economic advantage, trespass, conversion, and negligence.

 c. Punitive damages for intentional interference with contract, intentional interference with prospective economic advantage, trespass, and conversion.

THE RESIDENTIAL PURCHASE AGREEMENT (BETWEEN FOSSES AND MOLLERS)

1. <u>Terms of the Contract</u>

The Purchase Agreement was in writing and will be in evidence.

2. <u>Nature of Contract</u>

The Purchase Agreement was in writing, and will be in evidence. The Mollers and Fosses contend that the agreement was subsequently amended by oral agreement in various ways.

3. Matters Affecting Validity

The Residential Purchase Agreement confirms the agency relationship that existed between the Fosses and the Mollers, and confirms the Mollers' decision to sell the Property. However, it does not represent a good faith, bona fide offer to purchase on the part of the Fosses because of errors, omissions, and inconsistencies in the document, and the failure on the part of the Fosses to comply with material provisions of the document.

## VII. RELIEF SOUGHT

THE HOUSES SEEK THE FOLLOWING RELIEF

1. Specific performance of right of first refusal;
2. Damages (less mitigation) from delay in ownership, loss of possession, and alteration of the Property (currently $927,302);
3. Attorney fees and costs (currently $412,721); and
4. Punitive damages for the intentional tortious acts of Dana and Edward Foss in the amount of $925,000.

## VIII. POINTS OF LAW

Extensive legal briefing is not necessary at this time. The Houses provide below the legal theories for those issues that are most likely to be in controversy at trial. It is anticipated that additional issues may arise at trial, and the Houses reserve the right to provide points of law as to any additional issues at an appropriate time.

1. INTENTIONAL INTERFERENCE WITH CONTRACT

The Fosses intentionally interfered with the Mollers' ability to fulfill their obligations under the Agricultural Lease. The Restatement (Second) of Torts declares "one who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." §766.

California adopted this rule in *Imperial Ice Co. v. Rossier,* where the Court held that an action lies for inducing a breach of contract, even when the means employed are otherwise lawful. 18 Cal. 2d 33 (1941). The elements of the cause of action illuminated in subsequent cases are: (a) a valid contract between plaintiff and a third party, (b) defendant's knowledge of this contract, (c) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (d) actual breach or disruption of contractual relationship, (e) resulting damage. *Pacific Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal. 3d 1118 (1990); *Quelimane Co. v. Stewart Title Guaranty Co.,* 19 Cal. 4th 26 (1998); *Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004).

Determining whether the defendant's actions were "improper" or not poses the greatest challenge for the courts. The following factors are informative on this issue: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. Restatement 2d. Torts §767.

In the instant case, the Fosses had an interest in interfering with the Houses' right of first refusal because of their own desire to occupy and use the Property. This desire is evidenced by the fact that the Fosses in fact moved into the house and began utilizing the Property in June 2007, after they had been informed of the Houses' right of first refusal and the Houses' intention to exercise that right. As stated above, the motives of the defendant are instructive as to the question of whether the defendants' actions were improper for the purposes of determining liability in an intentional interference with contract case.

The Fosses conduct is also improper in light of the fact that both were real estate professionals. As such, the Fosses owe a duty of fair and honest dealing to all parties in a real estate transaction. Instead, they used their agency relationship with Paul Moller to gain a pecuniary and possessory advantage over the Property.

2. <u>INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE</u>

The Fosses interfered with the Houses' prospective economic advantage when they intentionally acted to thwart the Houses' right of first refusal, took physical possession of the Houses' leasehold without authority or consent, entered into a lease with the Mollers that prevented the Houses from continuing to farm on the Property, and made intentional changes to the Property that disrupted the Houses' established Organic Systems Plan under the USDA's National Organic Program.

The tort of interference with prospective economic advantage is a close relative of the tort of interference with contract. Unlike interference with contract, however, it requires a showing of wrongful conduct other than the act of interference itself. The elements of the tort are as follows: (a) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff, (b) the defendants' knowledge of the relationship, (c) intentional acts by the defendant designed to disrupt the relationship, (d) actual disruption of the relationship, (e) economic harm to the plaintiff proximately caused by the acts of the defendant, and (f) conduct that was wrongful by some legal measure other than the fact of interference itself. *Youst v. Longo,* 43 Cal. 3d 64 (1987); *Della Penna v. Toyota Motor Sales, U.S.A.,* 11 Cal. 4th 376 (1995).

Proving that the conduct was wrongful requires a showing of some element such as fraud, misrepresentation, or duress. Alternatively, the wrongfulness can be deduced from the defendant's motives, where, for example, the defendant becomes the beneficiary of his or her wrongful actions. Additionally, plaintiffs must show that the acts that disrupted the prospective economic relationship were intentional, and not merely negligent. The Fosses became the beneficiaries of their misrepresentations in the Residential Purchase Agreement when they gained possession of the Property, and they continue to be beneficiaries of their interference with the Houses economic advantage by reaping economic benefits from the Property for themselves. The fact that the Fosses were both real estate professionals is evidence that the Fosses' actions were not merely negligent, but rather the intentional acts of agents acting in their own interest in direct conflict with their duty of loyalty to the principle. See *Field v. Century 21 Klowden-Forness Realty,* 63 Cal. App. 4th 18 (1998).

### 3. TRESPASS

Beginning in June of 2007 and continuing to the present, the Fosses committed a trespass to the Property when they entered, altered, used, and otherwise occupied, or caused others to enter, alter, use or otherwise occupy, without the consent of the Houses, the Property leased by the Houses. The Restatement (Second) of Torts states that one is liable for trespass if he intentionally "enters land in the possession of the other, or causes a thing or third person to do so." §158. There is no necessity of harm to the property, only an intentional entering. The party attempting to assert a claim of trespass must first prove a possessory interest in the property.

### 4. CONVERSION

The Fosses are liable for conversion of the Houses' growing crops based on their actions, beginning in June of 2007 and continuing to the present, in intentionally destroying, damaging, altering, or using, or causing others to destroy, damage, alter, or use, the crops and resources on the Property leased by the Houses. To succeed in an action for conversion the plaintiff must show the following: (a) the plaintiff owns or has the right to possess the property in question, (b) the defendant intentionally interfered with the plaintiff's personal property, (c) that the interference deprived the plaintiff of possession or use of the property in question, and (d) that the interference caused damages to the plaintiff. *de Vries v. Brumback,* 53 Cal. 2d 643 (1960); *Zaslow v. Kroenert,* 29 Cal. 2d 541 (1946). Generally speaking, conversion lies only for damage to tangible property, and is not typically applied to real property. However, where goods attached to real property are severed or severable, they are subject to conversion. *Western Hardwood Lumber Co.,* 164 Cal. App. 2d 374 (1958); *Kirkman Corp. v. Owens,* 62 Cal. App. 2d 193 (1944).

### 5. NEGLIGENCE

The Houses allege that the Fosses acted negligently, beginning in June of 2007 and continuing to the present, in destroying, damaging, altering, or using, or causing others to destroy, damage, alter or use, the crops and resources on the Property leased by the Houses, without the Houses consent. The Fosses' negligent actions caused damage to the Houses. The elements of negligence are well defined, and can be summarized as a legal duty of care owed by

a defendant to a plaintiff, an act or omission that constitutes a breach of that duty, injury or damage to the plaintiff, and the defendant's breach as actual and legal cause of the plaintiff's injury or damages. *Koepke v. Loo,* 18 Cal. App. 4th 1444 (1993).

Under the common law rule regarding duty all persons are required to exercise ordinary care to prevent harm to others. *Hilyar v. Union Ice Co.,* 45 Cal. 2d 30 (1955). Under California law, "everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." Cal. Civ. Code §1714. In practice, courts will impose a duty based on a more nuanced set of balancing factors, including foreseeability of harm to the plaintiff, the connection between the defendant's conduct and the plaintiff's injury, the moral blame attached to the defendant's actions, and public policy considerations.

### 6. Specific Performance

Specific performance is an equitable remedy to a contractual obligation, governed by California Civil Code §§3384-3395. Specific performance is appropriate when the legal remedy is inadequate, the underlying contract is just and reasonable, the contractual terms are definite so as to allow enforcement, and the party seeking specific performance has or is readily able to perform. The reasonableness of the contract is determined from the time when the agreement was made. *Petersen v. Hartell,* 40 Cal. 3d 102 (1985). *Meyer v. Benko* 55 Cal. 3d 937 (1976).

Material factors of the contract must be in evidence in order for a court to grant specific performance. Whether the terms of a contract are certain enough to be enforced is a question of law for the court. *Bustamante v. Intuit, Inc.,* 141 Cal. 4th 199 (2006). The right of first refusal of any offer to sell clause contained in the Agricultural Lease provides adequate contractual evidence on which to base specific performance. The price and terms of purchase need not be specified in the lease in order to create a valid preemptive right. In fact, "it is the very essence of the right of first refusal that the price and terms will be determined in accordance with subsequent events". Miller & Starr, *California Real Estate* §19:138 at 427 (3d ed.).

The Houses contend that the Mollers breached a contractual obligation of the Agricultural Lease, specifically, the right of first refusal of any offer to sell clause. When a valid right of first

refusal exists, "an attempt by a landlord to sell to a third person, without giving the tenant adequate notice and opportunity to exercise the preemptive right, is a breach of the lease." 7 Miller & Starr, *California Real Estate* §19:137 at 423 (3d ed.), citing *Campbell v. Alger,* 71 Cal. App. 4th 200 (1999). Where the landlord has breached the lease, the tenant can enforce the terms of the lease via specific performance. Miller & Starr, *supra*, at 425, citing *Abadjian v. Superior Court,* 168 Cal. App. 3d 363 (1985); *Maron v. Howard,* 258 Cal. App. 2d 473 (1968).

## IX. ABANDONED ISSUES

None.

## X. WITNESSES

Houses' witnesses are listed in Exhibit A.

## XI. EXHIBITS

Houses' exhibits are listed in Exhibit B.

## XII. DISCOVERY DOCUMENTS

The Houses will submit into evidence the following discovery documents:

1. <u>Answers to interrogatories:</u>
    a. Response to Special Interrogatories, Set One & Set Two, by Paul Moller;
    b. Responses to Form Interrogatories - General, Set One & Set Two, by Paul Moller;
    c. Responses to Special Interrogatories, Set One & Set Three, by Dana Foss;
    d. Amended Responses to Form Interrogatories - General, Set One, by Dana Foss;
    e. Responses to Special Interrogatories, Set One, Set Two & Set Three, by Edward Foss;
    f. Amended Responses to Form Interrogatories - General, Set One, by Edward Foss.
2. <u>Responses to requests for admissions:</u>
    a. Responses to Requests for Admissions, Set One & Set Two, by Paul Moller.
    b. Amended Responses to Requests for Admission, Set One, by Dana Foss;
    c. Amended Responses to Requests for Admission, Set One, by Edward Foss.
3. The Houses will also use depositions, answers to interrogatories, and responses to requests for admissions for impeachment purposes.

## XIII. FURTHER DISCOVERY OR MOTIONS

The Houses will file a motion to have *in camera* documents transferred from the Solano County Superior Court to this Court. The documents in question are 74 communications between the Mollers' prior counsel and the Fosses' prior counsel, relating to this case, which were viewed by Judge Beeman on November 18, 2008.

## XIV. STIPULATIONS

None.

## XV. AMENDMENTS/DISMISSALS

None.

## XVI. SETTLEMENT

This Court conducted a settlement conference on May 27, 2011. A transcript of that proceeding is attached as Exhibit C. The parties will continue to explore settlement and will notify the Court of any agreement.

## XVII. AGREED STATEMENTS

Not feasible.

## XVIII. SEPARATE TRIAL OF ISSUES

Not advisable at this time.

## XIX. IMPARTIAL EXPERTS - LIMITATION OF EXPERTS

Not advisable.

## XX. ATTORNEYS' FEES

There is an attorney's fees' shifting clause in both the agricultural lease and in the Purchase Agreement. Additionally, California Code of Civil Procedure §1021.9 authorizes the award of fees to the Houses. The Houses will make an application for fees and costs pursuant to Local Rule 54-292. The Houses will further assert via testimony at trial that attorney's fees are an element of damages, as well as present evidence at trial regarding the amount of those fees pursuant to Federal Rules of Evidence (FRE) Rule 1006.

## XXI. TRIAL EXHIBITS - SPECIAL HANDLING

Not applicable.

## XXII. TRIAL PROTECTIVE ORDER

Not applicable.

## XXIII. MISCELLANEOUS

The following is a list of all non-discovery motions tendered to this Court and its resolution:

1. On October 7, 2009, defendants Edward and Dana Foss filed a Motion to Withdraw Reference. (Docket No. 1.) The motion sought to remove this case from Bankruptcy Court where it was pending as an adversary proceeding. Judge Morrison C. England, Jr. granted the Motion on January 5, 2010. (Docket No. 2.)

2. On April 28, 2011, plaintiffs Gregory and Jennifer House filed a Motion for Extension of Time, which was stipulated to by Defendants Edward and Dana Foss. (Docket No. 22.) The Motion was withdrawn the following day, April 29, 2011. (Docket No. 24).

3. On October 30, 2011, plaintiffs House filed a Motion for Preliminary Injunction to block a Trustee's Sale Under Deeds of Trust on the property that is the subject of this case. (Docket No. 27.) On April 16, 2012, Judge England granted plaintiffs' Motion for Preliminary Injunction. A copy of the Order on plaintiffs' Motion for Preliminary Injunction is attached as Exhibit D.

4. Plaintiffs also filed a Motion for Temporary Restraining Order on November 2, 2011, (Docket No. 35), which was granted by the Court on November 11, 2011 (Docket No. 41), pending determination on the preliminary injunction.

5. On March 5, 2012 Douglas N. Akay filed a Motion to Withdraw as Attorney for the Fosses. (Docket No. 59.) The Court granted this Motion on April 6, 2012. (Docket No. 63.)

6. On June 17, 2013 plaintiffs filed a Motion for Modification of the Scheduling Order (Docket No. 71), which the Court denied on September 16, 2013. (Docket No. 77).

Respectfully submitted:

Dated: March 27, 2014				Black & Rice LLP


						   /s/ Autumn E. Luna
						AUTUMN E. LUNA
						Attorney for Gregory and Jennifer House